We will hear argument this morning in Case 21-1195, Bittner v. United States. Mr. Geiser. Thank you, Mr. Chief Justice, and may it please the Court. The Bank Secrecy Act instructs the Secretary of the Treasury to require parties to keep records, file reports, or keep records and file reports. The question here is whether the failure to file a report leads to one violation of the Act or potentially dozens. In this case, over 270 violations of federal law for each account not listed on five annual forms. Under the Act's plain text, context, history, and purpose, the answer is clear. The Act requires parties to file reports, not report individual accounts. Any failure to file a report thus gives rise to a single statutory violation, no matter how many accounts a person has or how many mistakes a person might make on a single form. Because there is no independent duty to report each account, there is no independent violation every time an account is not reported. According to the government, Petitioner violated the Act 272 times for unintentionally failing to file five annual forms. If Congress wanted to expose innocent parties to potentially dozens of violations of federal law for a single unintentional annual misstep, Congress would have said so expressly. Because the government's contrary position is wrong, this Court should reverse. I welcome the Court's questions. Mr. Geiser, you put quite an emphasis on the report versus the account. What if the IRS simply said every account has to be on a separate report? And so rather than having just a handful of reports, you had one per account. What would your argument be? I think our argument would be that would still be a single violation. Because the way the Act is structured, it says that parties shall file reports as required by the Secretary. So if the Secretary says, I want a separate report for each account, and you fail to do that, then the answer is, did you follow the Secretary's instructions? The answer would be no, you didn't. So if you have ten accounts and you file five reports and you should have filed all ten, you violated the Act. But you violated it once. Because the only way to violate the Act is to fail to file the reports as required by the Secretary. Now, to be very clear in this case, the Court doesn't need to decide that here, because the regulation in question only imposes a single annual reporting requirement. Parties have to file a single report. That's the way it's been for decades. That's the way the law stood when Congress added the non-lawful penalty in 2004. And I think it would be very unusual for the Secretary to go and change that regulation after decades of practice to suddenly impose an individual report requirement for each separate account. Mr. Geiser, one of the contextual points that you raise, and that I think has some force, is that it's unusual for the government to impose draconian penalties on someone who is not willful. In other words, does not even perhaps know of the reporting obligation. And that's a powerful contextual point in your favor, I think. But the government comes back and says, well, but the statute has a reasonable cause provision that, in essence, takes care of people who have reasonable cause for not knowing of the obligation or failing to file the report with the accounts listed. Doesn't that reasonable cause provision take care of some of the concerns that you raise about people being penalized who didn't know about the reporting requirement or otherwise didn't know about their legal obligation? Your Honor, it may take care of it to some extent, but obviously not entirely because there are still non-willful violators of the Act. True. Sorry to interrupt. But in those instances, what I think the government will say is that, in this case, the lower court said as well, it's in those instances where someone was unreasonable and failing to make further inquiry to understand their legal obligations. So there's a gray area between willful and someone who didn't know at all and reasonably didn't know at all. It's someone who didn't know but should have known because they should have done more to find out their legal obligations. Your Honor, I think saying it's a gray area is exactly right. And the problem is these are truly draconian punishments for someone who does fit within that gray area. Petitioner here raised the reasonable cause defense. Now, he lost. But the penalty for losing shouldn't be increasing the potential statutory maximum by more than 50. Maybe you have a good argument that he should have prevailed on the reasonable cause. That's not the issue before us. But the point is, I think, that that is available for those people who reasonably didn't know about the legal obligation. But again, Your Honor, there are lots of ways that someone can make a mistake in submitting these forms, including in order to qualify the reasonable cause exception, you have to report the balance on the accounts. And so it is possible that someone simply forgot that they had an account, so they submitted an incomplete or incorrect FBAR. And that happens often. We're talking about checking accounts, savings accounts, potentially investment accounts. You could have retirement accounts. You could even have safety deposit boxes. It's very easy for someone to think that they've complied, and it turns out they haven't. They haven't submitted each account as they were required to do to qualify for the reasonable cause exception. And suddenly they're being penalized in order of $10,000 a clip for every single account that was accidentally not reported. But on the other hand, I mean, one might say that your version forces the government to treat equally somebody who has a $10,000 account and somebody who, like your client, has extreme wealth and many, many accounts and where he is depriving the government of much more information than, you know, the small, I-have-a-checking-account-for-$12,000 person does. Well, Your Honor, I think here that the relevant criteria is what is the culpable conduct. And the culpable conduct under the Act is not filing a report. Now, if you're doing that non-wilfully, someone who accidentally doesn't file a report because they don't know that that reporting requirement even exists, whether they have five accounts or 500 accounts, they are engaged in the same conduct that Congress is targeting. And I think increasing the punishment, especially for non-wilful actors, and especially those actors that aren't even aware that the FBAR requirement is a thing, you know, they don't know what they don't know. Those are people who I think it would be pretty extreme to say suddenly it's a $10,000 penalty per account, and especially taking a step back and looking at the Act and what Congress was doing. 5314 is a record-keeping-and-reporting requirement. The Secretary has to come up with the regulations, and Congress framed this as a violation of the statute. So the real question is if Congress is looking at that, what are they thinking? And what they're thinking is if you fail to do what the Secretary has required you to do, you're subject to a penalty that shall not exceed $10,000. If Congress wanted to impose a separate penalty for each individual account, Congress would have said that. And if we look at other sections of 5321... Congress did say that, I mean, starting with 5321, which speaks over and over again with respect to individual accounts. And the government's primary argument in its brief is that this shows that that's exactly what Congress was thinking of. When you have the reasonable cause provision, and it speaks of specific accounts, and the willful provision, and it speaks of specific accounts, and it's all in the structure of the statute, which is speaking of a single violation, and then trying to calibrate mens rea with respect to that violation, it would be very odd not to think that Congress meant for the basic provision, without reasonable cause, without willfulness, also to be speaking of individual accounts. You know, I actually read it exactly the opposite way. I know. If I can explain why, then. Because Congress was focused about account-specific issues. Now, again, these aren't single account-specific issues. It could be multiple accounts that they were focusing on. Congress naturally would have said in defining the violation, there's a separate violation for each account or each transaction not reported. If Your Honor would look at Section A1 of the statute, you can find this on 4A of the appendix of the government's brief, the very last sentence of Subsection A1 says specifically, for a violation of that section, a separate violation occurs for each day, and then it goes on and defines what a separate violation is. If Congress really were thinking of an account itself giving rise to a separate $10,000 penalty, I think you'd see identical language here in A5. You'd say, for a score violation of Section 5314, a separate violation occurs each time an account is not reported or each time a transaction is not reported. Congress didn't use that language despite referencing accounts for other purposes in the neighboring provision. Counsel, could that possibly be because we're assuming that Congress was focused on accounts when it's possible that they were actually focused on the person? So the thing that I'm trying to get my mind around is the fact that in 5314, I don't even see the word account. It says, you know, it refers to persons who make a transaction or maintain a relation. So first of all, we have no account word in this statute. And then when I look at the history of it, it appears to me, and you might correct me if I'm wrong, that Section 5314 originally directed the Secretary to require any resident or citizen who engages in any transaction or maintains any relationship to file this record. And when they amended the statute, they said they changed it to the language that exists here but said this is really not a material change. So if that's kind of how we're looking at it, then I think maybe we're not even being directed by the statute to care so much about the account because what Congress was trying to do is give the Secretary information about who was engaged in these kinds of activities, and then the Secretary could go afterwards and ask them for more information. There's that provision about the 25 accounts or whatever. You don't even have to give the information. So as long as the Secretary knows who is involved in this, then they have the essential nub of information that they need to do further investigation. That's how I'm looking at it. Am I wrong? I don't think you are, and I actually think that the points your Honor has made, I think, support our theory exactly. So the original version of the Act talked about who needs to file a report. It didn't say what you have to file. So Congress is not trying to say in that language. It's the only language, by the way, even in the old version or the current version, that even debatably references account is that maintains a relation language. That's what they're referring to for the account. But when Congress did that, they didn't say you need to report each account. They're simply telling the Secretary, by the way, Secretary, you figure this out. You figure out what rules we need. This is the regulated class. This is who you're regulating. It's not what that regulated class has to do. Go ahead. When Congress then premises the violation on the statute, and it's not on the regulation, and again, when the Secretary did make these regulations, it's very odd to think that this was an account-specific focus. When they're activated by an aggregate account balance, you could have 100 accounts that's under the $10,000 in one threshold. You don't have to report anything. And for people who have lots of accounts, you don't have to report what those accounts are. So I think it shows the Secretary also understood the statute is effectively looking at money in foreign bank accounts and foreign transactions and not necessarily focused specifically on each individual account is giving rise to a separate $10,000 violation. May I take you back to Justice Thomas's question? He asked you whether there would be multiple violations if the Secretary went back to requiring a separate report for each account. And you said, no, that's not what the statute provides. And then you made a second argument about the regulations. But to take you to the first part of that argument, aren't you reading into the statute there an annual reporting requirement? The statute, 5314, says nothing about how many times per year or how many years. It doesn't say anything about when, temporarily, when you have to file a report. So suppose the Secretary said you have to file a report every six months or every quarter. Under your theory, would those be multiple violations? I think in that case, depending on the wording of the regulation, which is key, I think there would be multiple violations precisely because you ask, what requirements did the Secretary impose? I have to file a report as required by the Secretary. What are those requirements? So you can pull out a list, write down every requirement, and you can just go and check it off. And if you check off every box, you're fine. If you miss a box, you violate the statute. But I don't think you can violate the statute more than once. The question is, did you do what you were instructed to do? If the Secretary says, I want this quarterly, then every quarter you do need to file a separate report. That's the focus of the Secretary. Counsel, am I right that under your view, if you don't file any report at all, say you have 10 accounts, that's a $10,000 fine? That's correct, Your Honor. And if you file a report but list only one account, that's also a $10,000 fine? That is also a $10,000 fine? Well, doesn't that seem – I would think the failure to file at all is more egregious. I mean, the Secretary doesn't even know, Commissioner, that you have accounts or that you're out there. And yet the listing only one account would seem to me to be, you know, a mistake and under your view, but at least the Secretary is aware that you're out there and have foreign accounts. Don't you think it's a problem that not filing at all and filing incomplete have the same fine? No, Your Honor, and I actually think the government might flip it around and say the problem is in the reverse, and this is why. If you fail to file the report, the most likely explanation is you didn't know you had to file a report at all. You don't even know what an F-bar is. You didn't know you need to file anything. If you file the report, it at least shows that you're aware that the report is there. And if you do fail to list multiple accounts, this is where the government tends to get aggressive and say now this is a willful violation, where you're subject to even greater penalties because you knew about the F-bar requirement, and for some reason you didn't manage to report all your accounts. Now, the reason that a lot of people don't report all their accounts is this is tricky stuff. When you read the statute, again, it doesn't even say account. It says maintains a relation. When people use software like TurboTax, and the Center for Taxpayer Rights points this out in their amicus brief, in TurboTax, when you're filling out the tax return and you check the box saying that you have a foreign account, it doesn't prompt you to file the F-bar form. If you are not aware of the F-bar requirement that you have to file a separate form and you go and independently hit the prompts to file that report, you don't even file the report. So it's very common for people not to file these things, not because they're reckless or lawbreakers. They simply don't know that this is something they have to do. What if they do it willfully? Is it your position that the willful failure to file a report by a person with multiple accounts is one violation per year? Yes, Your Honor. It's the same definition of violation I think carries throughout the statute, both in 5321 and in 5322, by the way, which is why, in our case, had Petitioner acted willfully in a criminal sense, under the government's reading, he would be exposed to a prison sentence of 1,300 years in jail, which seems pretty egregious for what is really a prophylactic paperwork error. Hi. It is a requirement that serves important functions, but this isn't a malum in se effects. There's nothing inherently wrong with not filing a document listing your accounts. This is only to prevent other criminal conduct or other substantive misconduct. And it's pretty unusual to see a draconian punishment of millions of dollars of fines for not filing accidentally, in our case, and even in a willful violation, doing it on purpose, you know, a single document. Now, I will point out that for a willful violation, given the way that the penalty is structured, it's still a single violation, but the penalty can go up based on the balances in the accounts that you didn't report. Well, that's what I wanted to explore with you and to follow up with the Chief Justice's question. I just want to make sure I understand how you read. Is it 3521? All right. So we have a violation for failing to file or for misreporting one account, many accounts, whatever. And if we're in willful land, as I understand your position in C, then the government may look at the amount in the accounts and take a considerable portion of the balance of those accounts.  That is right, Your Honor. Okay. And if we're in non-willful land, then we're in 5A, and it's the $10,000. And there's an opportunity that's A1, but then there's a reasonable cause exception. And this one got me a little tripped up, and I just want to make sure I understand your response, because there the willful cause exception does reference the amount in the accounts again. We go back to that. But as I understand your position, and the American College helped me a little bit here, I think, is that the balance in the account might become relevant as part of an affirmative defense that the taxpayer has to present if it wishes to avoid the non-willful violation on the basis of a reasonable excuse. Is that about right? That is about right. And so in order to take advantage of the reasonable cause exception, a taxpayer has to report correctly the balances in the accounts that they have. So if they have 10 accounts, and they report 9 of those accounts, and they fail to report 1, they cannot take advantage of the reasonable cause exception. They still get zapped for the non-willful violation. Exactly. Okay. All right. And again, for the willful violation, whether it's 1, 0, or 50, you go account by account, and the government can take a whole lot of it. They can. Now, again, unless you reported those accounts. Sure. But it's the willful violation. Yes. And that's how you would answer, because presumably this section applies if you file a timely report. I mean, I think your reading has more force if you're thinking of someone who just didn't file a report at all, like your client, and then filed it later. What about somebody who files a timely report, but omits some of the account information on it? I assume that you would say that then that's evidence of a willful violation, and so we're in willful land, as Justice Gorsuch calls it? Well, you're not necessarily in willful land. It depends on the circumstances. Now, the government will often say that's a willful violation, because they'll go and say, why were you reckless in not finding each of your accounts? You're in the best position to know that. So if I timely file an FBAR and report only three of my 25 accounts, 24 accounts, so I haven't triggered the other more lenient reporting method. So I have 24 accounts. I only report three. You say $10,000 as long as it's non-willful? As long as it's non-willful, it's a $10,000 violation. You have once, in a binary on-off way, failed to file reports as required by the Secretary. And even if it's willful, you have still violated that statute once. You failed to file a report that's compliant. Now, the penalty can go up. And when you're in willful land, you're facing a potential $100,000 minimum penalty. So the question is just, will it go even higher based on the accounts that you didn't report? But, again, that's why this is a $10,000 hit when you're looking at someone who's acting innocently. They're not doing this on purpose. Maybe they didn't know that the requirement existed. They made a mistake. But doesn't – well – Doesn't – I come back to Justice Gorsuch's question, my earlier question. Doesn't the reasonable cause provision take care of that? And then I had one question specifically on the reasonable cause provision. I understand the first clause of it, such violation was due to reasonable cause. And then it says the amount of the transaction or the balance in the account at the time of the transaction was properly reported. I didn't really understand in context what that's getting at. And I didn't find a lot of help in the brief. So I want both sides to tell me what that's talking about. I think the best reading of this language is they're saying that if you have correctly reported the balances in the accounts – Where and when? On your annual FBAR. Now, I think that the most common scenario – and it's actually hard for me to think of ordinary cases where this would otherwise apply – is where you fail to file an FBAR, and then you file a corrected FBAR that then eventually gets it right, but then it's untimely. Or you don't file anything, and you file a late FBAR that correctly lists your accounts. Let me just ask my concern. If you fail to file at all, are you eligible for the reasonable cause provision? If you never file, then no, you're not. Because you haven't properly reported the balances in the accounts. So it's only when you have actually gone around to filing something. And again, I think it normally will apply for a correct submission that is untimely. If you haven't filed originally, you say because you didn't know, you file later, and you file correctly later in terms of the amounts and accounts, you're eligible then for the reasonable cause provision. If, again, you can convince the IRS that you have acted reasonably in not filing on time. Right. And you would say it's reasonable. Well, if I didn't know about it, and, you know, I'm an immigrant to the country. I didn't know about this requirement. I guess that's one class of people who often are caught up in this. Then you get the reasonable cause, you would say. Maybe. Maybe. That's the question. Right. And isn't that the problem? That the safety valve that you're pointing to in this case to get the person out of the obligation is still in the control of the government. It's in control of the IRS, who often says, you know, maybe unsurprisingly, I don't think this was a reasonable cause. Exactly. Well, on the other hand, I mean, willfulness is an awfully hard standard in contexts like this for the government to meet. And we know that in countless contexts. Now, we're dealing here with a statute. I mean, I sort of suggested that I think 5321 is very clear in its account-specific nature. I think 5314 is also pretty clear in its account-specific nature. And you're coming in and you're making an equitable argument. And the equitable argument has a kind of force. But I think the questions here are, is that force mitigated when one realizes that there is a reasonable cause exception, and that on the other hand of this equitable argument is that there is a real difference between a person with not much wealth, not knowing that he should be filing something about his checking account, and a person who has hundreds of millions of dollars in many, many accounts, is constantly making transactions, is constantly opening and closing them, maybe doing it to evade taxes, maybe doing it to finance terrorism. And, you know, in that case, the equities go against you. And that suggests, well, let's just look at the statute. And the statute, as I said, is very account-specific. Well, Your Honor, first I want to be clear. Our primary argument is not equitable, it's textual. We just read the statute in a very different way. And I would like to try to convince you of that textual reading, because, again, there is nothing in this statute that says you have to report each account. It says you have to file reports as required by the secretary. If the secretary doesn't promulgate a regulation, you don't have to do anything at all. The only obligation imposed on anyone that's regulated under this provision is to do whatever the secretary has told you. I don't know how that helps you, because obviously you're saying that there is an obligation on the account holder anyway. So whether the obligation has to do with a particular account or not, you run into that same problem. Oh, I don't think so, Your Honor, because the problem you run into is you haven't filed a proper report. That's one violation. The government's trying to say there's an independent- You can finish. Thank you. There's an independent, stand-alone obligation to report each individual account grounded in the statute itself. Because, remember, 5321 is specifically limited to statutory violations. It's not a violation of the regulation. And when Congress wanted to extend this to not doing what the regulation says, they said so expressly. They do that in A2 and A3 of 5321. Thank you, counsel. Justice Thomas? Mr. Gattas, I'm still not understanding how, if you conflate the obligation to file a report with the account, that it's one account, one report, how that doesn't change your argument. Because if you say you have to do what the Secretary says to do, the Secretary said file a report, and it's one account per report. And now you've violated that by not filing the report on that specific account. And what I hear you arguing now is that all of the accounts are on several reports, and it's simply not filing the report is the problem. I don't know why, if you file one report per account, each failure is not a violation. Well, Your Honor, I think, first, just to be very clear, the regulation we have requires a single report that lists all your accounts. No, I understand that. But I'm saying, what I'm asking you, the Secretary tomorrow morning can change the regulation and say one report per account. And I think if the Secretary tomorrow morning departed from decades of settled practice of requiring an annual report where all the accounts are listed, specifically to try to multiply the statutory violations, I'd be very curious how an APA challenge would come out to that change. But to answer your question directly, the reason we think that it is still a single violation is Congress did not write account-specific rules directly in the statute. They basically delegated this problem to the Secretary. They said, you figure out what reporting requirements are there, you figure out what people are required to do. And then they turned around and said to the regulated parties in 5321, did you comply with whatever the Secretary required? So if the Secretary says, here's a piece of paper, list all your accounts, if you list seven of ten, that's a violation. If they said, here's a stack of paper, I want you to write down each account on a different piece of paper, and you turn in seven pieces instead of ten pieces, you've again not followed the Secretary's instructions. But it really is a question sort of at a higher level of generality based on the way this statute is structured. But again, you can disagree with every single thing I've just said and still reverse, because in this case the regulation is a single annual report, and all you need to do as a regulated party is to file reports as required by the Secretary. It does not say to report each account. Justice Alito? Justice Sotomayor? The problem I'm having is that you seem to be equating report with a form. And my problem is that as I read everything in the statute, the report, you say it's not as to an account, and Justice Jackson says not to an account either. But the whole structure says every time you make a transaction or maintain a relationship for any person with a foreign financial agency, you have to tell the government about that. That's what the word report means. Whether you do it on one form or ten forms is irrelevant to me. I think the essence as set forth in the plain language of the statute is if you have a relationship, an account, tell me about it. I thought that was the whole purpose of this act was that wealthy people were swirling away millions of dollars in foreign accounts all over the world, and the government wanted to know where these accounts were. That's the whole purpose of the statute. All of the transactions that are being set are in the singular. In the case of a violation involving a failure to report the existence of an account, I'm taking out things that are relevant, the amount of the penalty is the balance in that account. So to me, where am I missing your argument? You seem to be equating report with a form. I'm equating report with what the statute talks about, the transaction, the account. A few points, Your Honor. First, what the statute actually says, the only thing that is imposed on the regulated party is to file reports. File, I think, is a very important verb. That is a formal submission. You're taking a report and you're filing it. The only reference to accounts is in that triggering conditional language. Again, it does not say that you need to report each account. That's not the statutory language. The statute defines when the secretary, and again, this is directed ultimately to the secretary. Secretary, you figure out what reporting requirements are necessary. And then the regulated party has to file reports as the secretary requires. The secretary could say, I'm not going to have reporting requirements at all. I'm just going to have record-keeping requirements. It's entirely up to the secretary how to frame this. But the violation is of the statute, and the only statutory duty is to file reports. I think this is especially clear going back to the original version of the Act, which is framed in terms of who needs to file reports. It's identifying the class that the secretary is supposed to regulate. That who clause in the original version is the only reference to specific accounts or specific transactions. And again, the targeted conduct is filing reports. Now, as for the part about Congress trying to prevent people from doing bad things with foreign accounts and doing money laundering and tax evasion, Congress originally was focused on the willful violator, which is why for decades under the Act, there was no penalty whatsoever for a non-willful violation. So it would be pretty extraordinary in 2004 if Congress went after decades of no penalty to suddenly millions and millions of dollars for failing to file, again, non-willfully, a single report that happened to list multiple accounts. So I hope I'm answering Your Honor's question. I'm not sure, but that's okay. Justice Kagan. Justice Gorsuch. Two things that haven't come up that I just want your opportunity to react to. One was on the form, as I understand it, if an individual has 25 or more accounts, they don't have to disclose anything about the accounts. They just pick a box saying I have 25 or more. How does that influence your argument?  The secretary really isn't concerned about seeing every individual account because you think that someone who has even more accounts would be the person who you're most concerned about doing something that might be otherwise nefarious. And I think the other way that it really does help us is it's pretty extraordinary to say, let's say you file that report and it's accurate. You check the box correctly. You say I have 30 accounts, but you file it a day late. Under the government's view, you've just committed 30 separate violations of federal law by filing a single form one day late because you didn't report those 30 accounts in a timely fashion. I think that is an extraordinary reading of the statute, especially when it has nothing at all that says there is a specific requirement to report each account. And secondly, there was some discussion in the briefs about the government's guidance documents in this area which seemed to favor your position. The government isn't asking for Chevron deference for its interpretations of the statute and argues that you shouldn't be allowed to use them to stop the government either. What do we make of all of that? Well, I think there are a couple of things you can make of it. The first is that when the government itself is reading the statute, even if they're doing it as they suggest kind of in a casual way, they come to our interpretation of the statute. They've said repeatedly over time that the failure to file an F-bar is subject to a maximum $10,000 penalty. Now, the government's correct that they didn't go on and say, oh, by the way, if you have multiple accounts, it's the same rule. But the fact that they're reading the statute when they're simply giving notice to the regulated stakeholders the same way that we're reading the statute, I think that's a point in our favor on the plain text. I think it's certainly a suggestion that it's a reasonable construction that would be entitled to the rule of lenity if the court thinks that our readings are actually in equipoise, although I'd like to say that we have a better textual reading than they do. Thank you. Justice Kavanaugh? Two questions. First, the hypothetical asked by Justice Thomas is a problem for you, as you're aware, and in your reply brief, page 7, footnote 3, you say you don't necessarily have to answer that question. Can you win this case if you lose Justice Thomas's hypothetical, or is that it? Oh, we absolutely win this case. How? Even under the new hypothetical reg? Go ahead. I just want to make sure I'm answering the question correctly. Under the current regulation, the regulation that actually exists, we can win the case even if you disagree with my analysis of the hypothetical future regulation that doesn't exist, and that's because the current regulatory scheme requires a single report where you list all the accounts. So Justice Thomas's hypothetical is dealing with the scenario where you actually have to file multiple reports. Now, I admit that that's a slightly harder case for us because in the statute... Analytically, how do we draw the line between that hypothetical case and this case? Just write the sentence for us. Well, I think the easiest way to write it is that hypothetical case would only apply because there's a requirement to file multiple reports. Got it. So each time you fail to file a report, you violate the statute. Here, you file a single report. That's it. Got that. So second question is you talked about the original act, but of course the broad context of this is September 11th, the post-September 11th efforts to ferret out terrorist financing and the government's Patriot Act, and then this act in terms of going after terrorist financing. Not surprisingly, therefore, the statute has substantial penalties and is very broad and puts the duty, in essence, on people to know their legal obligations. Do you want to respond at all to that context? It's not a surprise it changes after September 11th, 2001. I agree, Your Honor, it's not a surprise, but I would say that a $10,000 penalty for most people for a paperwork error that they've done unwittingly, they haven't done it. They're not trying to hide anything. It's not accompanied by any substantive misconduct. A $10,000 hit for the average person who's unaware of the FBAR requirement is a pretty substantial hit. Again, the change there is from zero. No penalty whatsoever for a non-wilful violation. It's unaware but should have known, I think, on the reasonable cause, but I've explored that, so I'll let you go. Thank you. Thank you. Justice Barrett? Yes, so we're talking about the reporting requirement in the case, but I just want to focus for a moment on 5314's requirement. It says to keep records, file reports, or keep records and file reports. So on record-keeping, is it your position that the record-keeping requirement is account-specific? No, Your Honor. I think we would say it's the same thing. You either comply with the – you've either kept the records the Secretary has required you to keep or you haven't. So if I have 20 accounts and I only keep records on one, I've only violated it once? Well, you've only violated it once for the record-keeping, and again, in a non-wilful way. So if we're talking about a non-wilful violation, you didn't keep records because you didn't know you should have kept records. Now, if Congress is concerned about that, they can use language in A-5 that mimics language in A-1 and say for a violation of 5314, there is a separate violation for each record not kept. That's the kind of language I think you would expect to see, especially when Congress is using other account-specific language. They're thinking about it in some cases as, I'm going to look at an individual account and how it complies with whether there's a heightened penalty or not, but yet when it comes to the basic violation, I'm looking at a statute that tells the Secretary, you figure this out, you impose whatever requirements you think are appropriate in the manner and to the extent that you see fit. Justice Jackson? Justice Alito? Following up on Justice Barrett's question, is there a temporal requirement for the reporting failure to, I'm sorry, not reporting, record keeping? There is a five-year requirement under the regulation, and so I think that for that five-year period, you could have a single violation. I think the alternative under the government's view would, I guess, be an infinite number of violations for every minute or every second that you haven't kept a record, which I think is obviously an unworkable standard. Thank you, Counsel. Mr. Garnieri? Mr. Chief Justice, and may it please the Court, the Bank Secrecy Act authorizes the Secretary of the Treasury to assess a separate civil penalty for each foreign financial account that a U.S. person fails to report. Petitioner violated the act 272 times, not just five times. When he failed to report dozens of foreign financial accounts in each of five years. That understanding of the statutory scheme flows straightforwardly from the text. As Justice Kagan illustrated this morning, Section 5321A5 sets up a one-to-one correspondence in which each undisclosed account is a separate violation. We know that because the rules in Section 5321A5 for determining the maximum penalty for a given violation involving an undisclosed account turn on the balance in that particular account. Petitioner's reliance on the Dictionary Act is therefore misplaced. The background rules in that act don't apply if the context of a particular statute indicates otherwise. Here, the text of Section 5321A5 demonstrates that Congress used the singular precisely and with care to establish a one-to-one relationship, the relationship I just described. One account, one violation, one potential civil penalty. Reading the statute's references to a single account to mean one or more accounts would defeat Congress's deliberate design. And there is a good reason that Congress set the penalty scheme up this way. Each time a U.S. person maintains an account with a foreign bank, that relationship is a matter of distinct concern to the United States. That is why the text of Section 5314 directs the Secretary to adopt recordkeeping and reporting requirements that capture account-specific information, such as the account number. When a U.S. person fails to report multiple qualifying accounts, the person violates Section 5314 multiple times. And that remains true even if the Secretary permits the required reports about each account to be consolidated on a single annual form. I welcome the Court's questions. One of the things that seems problematic to me is you cite 5314, but it doesn't mention accounts. Well, Justice Thomas, Section 5314 is phrased in terms of filing reports and keeping records about a relation between a U.S. person and a foreign financial institution. The relation the statute is discussing is an account relationship. Well, it doesn't say that, though. It's true that it does not use the precise word account, but we have always understood it that way. The implementing regulations demonstrate that the relationships that we are concerned here are banking relationships. It's your customer or depository relationship with a foreign bank. But why isn't that relationship established by the existence of a single account? In other words, you know if a person has one account that they have a relationship for foreign purposes, and there's nothing in the statute that makes clear that Congress intended this statutory provision to be the mechanism by which the United States would get all of the information about the full extent of that person's relationship with any bank. And let me just, while I have a moment, tell you what really concerns me about your position. You said it's a matter of distinct concern that the United States has with respect to any particular transaction, but it's not illegal, as far as I can understand, for people to have foreign bank accounts. That's not an independent legal problem, and they can structure those accounts in any way they want. So they can put their million dollars in a single account, they can have 10 accounts with, right, however much, $100,000 a piece or whatever, but you're extracting different penalties from them for this purpose based on this totally lawful behavior. It seems to me to make more sense that Congress was talking about wanting to just know who was doing this kind of thing for the purpose of this statute. Well, Justice Jackson, I think the statutory text in 5314 directly answers your question about whether we care just about the fact that you have a relationship with a financial institution, even if that encompasses multiple accounts, or whether we care about each account individually. And it answers that in the enumerated list of information that is at the end of 5314A, which is reproduced at page 2A of the Gray Brief. And if you look at that enumerated list of information, this is a list that dates to the original Bank Secrecy Act of 1970. It is a list that Congress said, look, the reports and records that we are directing the Secretary to require should address this information. Yes, but this information doesn't say specifically accounts. In fact, three of the four things are exactly what I'm talking about. The identity and address of the participant, the capacity in which the participant is acting, the identity of the parties and interests. We just want to know who you're involved with and a, quote, description of the transaction. Justice Jackson, respectfully, I disagree, particularly subparagraph 2, the legal capacity in which a participant is acting. The capacity in which you hold these accounts can vary. You may be the beneficial owner of one account at a financial institution. You may have signatory authority over a second account. But that doesn't compel the list that you say is required. Why couldn't you just have a paragraph that says that? I have a number of accounts, and here is the capacity in which I hold them. And the description of them is they're all bank accounts. It doesn't say give me an enumerated list of each account or transaction. Well, I think the text here is specific enough to convey that Congress was concerned about each one of these accounts. I would also point out, Justice Jackson, the question before this Court is not about whether the Secretary should have implemented this in a different manner to require reporting your relationship with a given foreign financial institution as distinct from the various accounts you have with that financial institution. Certainly this list illustrates that the per-form approach that Petitioner has championed can't be correct. Suppose someone reports multiple accounts, lists all that person's accounts, but messes up the address as to each account. How many violations? Well, the violation here is the failure to report the account as required by the Secretary in the regulations in the form. So if you misstate the address of the bank for each one of ten accounts, you've committed ten violations. Now, of course, the reasonable cause exception would probably operate in those circumstances to prevent the Secretary from actually assessing a penalty, but we would think about that as ten accounts if you've made ten errors with and, excuse me, ten violations if you've made ten errors for ten accounts. What is the government's position as to whether reasonable cause includes ignorance of the law? No, and we wouldn't accept that in this circumstance or ordinarily in terms of, you know, parties aren't excused from satisfying their legal obligations merely by claiming that they're ignorant of them. But we are told, maybe you'll dispute this fact, that many, many people who have foreign bank accounts of over $10,000 are unaware of this regulation, unaware of this law and these regulations. And even if they're aware of it, they're pretty hard to parse. So all those people are committing violations, and if they come in and they say, I didn't know anything about this, it doesn't matter, that's not reasonable cause. That could be an important part of the reasonable cause analysis. It's not sufficient standing alone. The standard for reasonable cause that the agency applies and that the lower courts have adopted is that you have reasonable cause for your failure to report an account if you fail to report it despite exercising ordinary business care and prudence. Now, if you can really demonstrate that you are wholly unaware of these obligations and also that if you had been acting prudently, you wouldn't have discovered these obligations, I think that's a powerful case for reasonable cause. Now, a petitioner in this case tried to make that case and his view was roundly rejected by the lower courts. Counsel, does the United States agree, as the Fifth Circuit put it, that there is a longstanding canon of construction that if the words of a tax statute are doubtful, the doubt must be resolved against the government and in favor of the taxpayer? Now, I know your position is that you dispute that this is a tax statute, but... Mr. Chief Justice, I don't think that there is a legitimate or pro-tax avoidance canon. This court hasn't applied a canon like that in decades. Again, of course, our first-line response here is that this is not a tax case anyway. These penalties are authorized by the Bank Secrecy Act. So even if there were such a canon, it wouldn't apply to this case. In response to Justice Alito's question, initially I thought a little blasé about the ignorance of the law is no defense. If you truly don't know a legal requirement, given the numerous regulatory requirements imposed on someone, and it's true, I believe, that a significant percentage of people who have these accounts have no idea they're supposed to do reporting, that's a little bit problematic. Now, you then said that reasonable cause provision can take care of that. And I think you said if someone truly did not know about their legal obligation and had exercised prudent care, I suppose, in trying to be aware of their legal obligations, you said that's a powerful case. That should be a definitive case, shouldn't it? It is a very powerful case, certainly. You added a very. That's good. Well, Justice Kavanaugh, it's hard to give categorical answers because this is a fact-specific test, so we would want to sort of take the facts as given in a particular case. Can you just help me on the second paragraph of the reasonable cause provision? Because I had trouble, I spent a lot of time trying to parse that and trouble finding an answer to that in the briefs. What's that getting at? Top of 6A there? Candidly, Justice Kavanaugh, I tripped over that language too when I first read the statute. So we understand that to mean that the balance in the account has to have been properly reported at the time the reasonable cause exception is being invoked. And so ordinarily what would happen in these cases is that you would file a delinquent F-bar that accurately reports the balance in a particular account, and that would satisfy that. I think it was written that way because there's some suggestion in the history that, you know, at the time legislators contemplated that the balance in these accounts might be reported in other ways as well, for example, through the income tax system. Not true, but why isn't that a strike against your interpretation that when we talk about penalties for failing to file the report in 5321, 5A talks about non-willful violations and it's any violation, period, no account mentioned, $10,000. And then willful violations on C, which is what your brief really heavily focuses on, does talk heavily about accounts and says that it's $100,000 or 50% of the account, whichever is greater, and it goes on and on and on about accounts. That isn't mentioned in the non-willful violation. That language doesn't appear. The only place it appears was the reasonable cause exception, which is, as was pointed out to me in the American College brief, an affirmative defense. It's not what the government has to prove to establish a violation. So the one place where you need it, you don't seem to have it. What do we do about that? Justice Gorsuch, I think certainly the language in Paragraph C, the willful violations, I think... Yeah, but we're not in willful land, okay? So we put that aside. And one could easily... Let me just finish. Sure. One could easily understand that Congress would say, with respect to willful violations, we're really going to whack you, all right? And we're going to take 50% of every account where there's a willful violation. And that was the law as originally drafted. But with respect to non-willful violations, that language just doesn't appear. Justice Gorsuch, two points. First, all of these subparagraphs are talking about the exact same violation. Subparagraph A... The violation is the failure to file the report. That's the violation. Spot me that, okay? You may disagree with that, but spot me that. For purposes of understanding 5321's penalty provision, shouldn't the absence of the word account in the very provision where you need it count for something? I don't think that's right, Justice Gorsuch, because all of these are talking about the exact same violation. So there's only one part of 5321A.5 that authorizes the Secretary to assess a civil penalty for a violation. That's subparagraph A. Everything that comes after subparagraph A is a set of rules for determining the penalty that may apply for that particular violation. And we know that the rules in subparagraphs C and D for willful violations are explicitly account-specific because they turn on the balance in the account. Everything below that... Well, Justice Gorsuch, the other thing I think might be relevant here to help convey our reading of the statute, if you look at subparagraph C, it also says that... Put C aside. That's willful. I'm trying to ask you about the non-willful. I'm trying to make a point about how the different paragraphs relate to one another. Subparagraph C says that you can't get the reasonable cause exception if it's a willful violation. And so what that means is that the reasonable cause exception only applies in cases of non-willful violations. And the reasonable cause exception is itself account-specific. It uses language... Yes, again, I think that what was pointed out to me, maybe you have a response to this, I'd like to hear it if you do, is that's a defense that the taxpayer then has to come forward with. That's not what the government has to prove to establish a non-willful violation. Well, I agree with that, but we're making a point about the way the text is written, Justice Gorsuch. If I can shift then. I think I understand your point. What do we do with the government's guidance documents? Which I would, if it favored the government, I would fully expect the government to have an argument about Chevron deference before us. Or maybe it wouldn't these days, I don't know. But we would at least be asked to give it Skidmore deference. And here, you're like garlic to a vampire for the government. You don't want to touch them. What do we do with that? Well, there's a logical explanation for that, Justice Gorsuch, and that is that the penalty, the specific question this Court is being asked to resolve in this case is what is the meaning of the phrase violation of Section 5314? But if the government is killing taxpayers... Section 5321A5. The Secretary has not promulgated a regulation. It's got a legion... Nobody promulgates regulations anymore. It's too troublesome. They issue guidance documents. And so the government has issued legions of guidance documents. We've got them all over the briefs. And I just want to hear, on the merits, what's your response to that? Sure. The critical guidance document here is the Internal Revenue Manual, which is the guidance document that IRS examiners apply in assessing penalties in these cases. It is publicly available to taxpayers. If you look at the Internal Revenue Manual, it expresses the same per-account view that we are defending in this case. What about all the other materials? The documents that Petitioner and Yannicki are pointing to are some other places in which, in isolated statements, the IRS has said things like, if you fail to file the FBAR, the penalty can be up to $10,000. Up to $10,000. The petitioner has not identified a single instance in which the government has ever endorsed his view that if you fail to report multiple accounts, you can only be liable for a single penalty. I'd also like to talk a little bit about exactly what Petitioner's view is. Before you move off that, the March 2011 version of Letter 3709 says, for the failure to file TDF 90-22.1 due on or after June 30, 2005, the penalty cannot exceed $10,000. Do you think that's unclear? I think it was not precisely phrased. I think it would have been more helpful if the agency had gone on to say that, actually, if you fail to report more than one account, the penalty per unreported account is $10,000. That has been the agency's institutional position for many years. This is not a case in which there is any legitimate suggestion. The agency has shifted positions over time. This is, at best, a kind of attack on the agency's messaging to the public, which maybe could have been better, but I don't think that that should decide the question here. The messaging to the public has certainly changed over time, hasn't it? Well, as I said, the key document here is the Internal Revenue Manual, which has not changed over time since 2008. That has articulated the same view that we are defending in this court. What about criminal violations? Do you have the same reading? Yes, we do. We think that if you satisfy the other elements of the criminal offense in Section 5322A, that each willful failure to disclose to the United States one of your foreign bank accounts could be the basis for a separate criminal prosecution. I know Petitioner has made a big deal about that, including this morning repeating this fantastical figure about 1,300 years in prison. I think the court should be assured that there are other significant constraints on the scope of the criminal prohibition in the Bank Secrecy Act, including, in particular, this court's decision in Ratzlaff v. United States, which interpreted that provision and construed it to require willfulness. In the heightened criminal law sense, we can only bring a Bank Secrecy Act criminal prosecution if we can prove beyond a reasonable doubt that the defendant knew that when he was acting, what he was doing was unlawful. So those are rare cases, and that's certainly not this case. We're not making an allegation in this case that Petitioner had satisfied that heightened willfulness. This is a non-willful case, and I don't think the criminal statute really has anything to do with it. Well, you're not making an allegation here, but your brief recites facts that suggest that you think you could. That's right, Mr. Chief Justice. I think this case came pretty close to the line, and I think that's why the agency chose to go up to the maximum available civil penalty in this case. I mean, Petitioner earned more than $70 million in his time in Romania. He filed multiple Form 1040s, multiple individual income tax returns, during the period that he was living in Romania. If you had read carefully the instructions to the Form 1040 during the years in which he filed those forms, there are instructions in the Form 1040 process about your foreign account reporting requirements. There is a question on Schedule B of 1040 that asks, do you have foreign bank accounts? And I'm paraphrasing here, but in substance it says, if you have foreign bank accounts, please see Treasury Department Form 90-22.1 for your FBAR filing obligations. And I think that's actually another piece of the puzzle here in terms of the equities of the case. We are not trying to trip people up. In the Form 1040 individual income tax return filing process, there are instructions there about the FBAR. We are trying to bring it to people's attention so that they are aware of these filing requirements and they can comply with them. Petitioner tried to make the case that his violations here were inadvertent, but there was substantial evidence to the contrary. The district court rejected his assertion of the reasonable cause defense. The Fifth Circuit affirmed that on de novo review, and he didn't seek this court's review on that issue. That all makes sense as to this case. The amicus briefs make a point that there are a number of different categories of people who are not going to fit that description of this case. Immigrants in the United States, then Americans abroad who don't have this kind of knowledge and the statistics were, at least in the amicus briefs, that there's a sizable percentage of people who still don't know about this reporting obligation. Do you just want to respond to that and try to explain who the populations are who are not reporting and the knowledge that they might have about the requirement? Sure. We don't have precise figures or data about the current rates of compliance with the foreign account reporting obligation, so I can't tell the court what percentage of Americans living abroad actually have a reportable foreign account, meaning they have accounts outside the United States that have an aggregate balance that exceeds $10,000. I know that's actually a significant amount of money for many Americans, so you're talking about the small slice of people who have that much money in their aggregate accounts and those accounts are abroad. Certainly, I don't think adopting petitioner's view in this case will solve that problem. Congress authorized the Secretary to assess penalties for non-willful violations of the Act in 2004 after amassing abundant evidence that in the absence of those penalties, the rates of compliance with these foreign account reporting obligations were relatively anemic, and that was a problem. That was a problem that Congress solved by authorizing the Secretary to assess penalties for non-willful violations. In that same 2004 enactment, Congress also created the reasonable cause exception, which I think again speaks to an effort to sort of make sure that the truly blameless have an out here, and Congress also increased the penalties for willful violations in that 2004 law. So I think the whole history here demonstrates that this is really a serious matter. Could you return once again to your understanding of the relationship between the reasonable cause requirement and ignorance of the law? Your first answer when I asked that was ignorance of the law is not reasonable cause, but then you seem to say if someone isn't aware of the reporting requirement, that makes a powerful case, a very powerful case for a reasonable cause. So what is the relationship exactly? Sure. The standard here is that whether you were acting with ordinary business care and prudence, if you were in fact aware of your FBAR reporting obligations, you're out. There is no way you can qualify for the reasonable cause. So it's sort of a, you know, you're only talking about people who have a colorable claim to not knowing about their filing obligations. And then with respect to that group of individuals, the question is, well, should they have known about their filing obligations? And the conclusion of the lower courts here was that petitioners should have known about their filing obligations. No, I understand the facts of this case, but I'm thinking of other cases. Sure. And it's hard to generalize because whether you should have known about your filing obligations is going to depend on lots of factors that might vary from one American to the next living abroad. Were you a person of business sophistication? Did you have the means to retain professional tax and accounting advisors? Were you filing the Form 1040 in which, if you had read the instructions, you would have been informed about your foreign bank account reporting obligations? Is this your first violation? You know, is it really credible to say that you had 50 or 60 foreign bank accounts with millions of dollars in them? You had numbered accounts in Switzerland and Liechtenstein. You were paying professional Romanian tax lawyers and accountants, but you made no inquiry into your obligations in the United States? That's not plausible in this case, but, you know, the reasonable cause exception remains available to those individuals who would like to seek to invoke it. The other part of that, you know, I understood from some of the court's questions earlier, there was some skepticism that the reasonable cause exception is sort of a sufficient answer here because it's applied by the agency in the first instance, but the judicial review is also available. If the agency determines that you lacked reasonable cause and you disagree with that, you can obtain judicial review of the agency's determination, and this case, again, illustrates that. Am I right that you can get judicial review before you're forced to pay, unlike in some tax situations? That's absolutely correct, Justice Kavanaugh. There is no requirement in this scheme that you fully pay the penalties before you get review in federal district court, and that's an important difference between these penalties and tax penalties. Presumably you would have to have a lawyer to do so, so there is some cost to seeking to get out of this, right? That's absolutely true, Justice Akshen, although we're talking about the small portion of people who have foreign bank accounts abroad with a balance greater than $10,000, and the question presented here really only impacts those individuals who have more than one foreign bank account. But realistically, that's anybody who's living overseas. I mean, this applies to people who are living overseas and have more than $10,000 in a bank account. It's a foreign bank account because they're living there. Yes, I agree with the slight amendment. It's U.S. citizens. It's an obligation incumbent on U.S. citizens. Any U.S. citizen living abroad who has more than $10,000 in a bank account wherever they're living is subject to this. That's correct. Counsel, I'd like to just understand how the form interacts with your understanding of the penalties. As I understand it, on the form, if you have 25 or more bank accounts, and we're talking about an aggregate $10,000, not one bank account in aggregate, but if it's over 25, you tick a box and you're done. Is that right? No, Justice Gorsuch. Under the 25-account rule, there is a box that you would check saying that you satisfy the 25-account rule. You also have to list the precise number of accounts that you have. Okay, the number. Okay. Under the current regulation. So long as I tick the box and say I have 25, it would seem pretty hard to accumulate non-wilful violations. Whereas if it's under 25 and you have the wrong address of the bank 12 times, that's a $120,000 fine. Is there some incongruity there that people with more bank accounts are actually less susceptible to penalty than those with fewer? Well, I take the point, Justice Gorsuch. You certainly have to provide less information in the first instance if you qualify for one of these 25-account rules. You are under a continuing obligation to provide that information to the Secretary, and in that sense, if you misstate information when the Secretary requests it, you are in the same position as the individual who is required to provide that information up front on the form. As we've explained in our brief, the Financial Crimes Enforcement Network has published a notice of proposed rulemaking to eliminate the 25-account rule. It is a vestige of an era before word processing and electronic filing, in which the agency's judgment at the time was that individuals who had a very large number of accounts, the administrative burden of reporting all of those accounts in the first instance, rather than just providing information when requested, exceeded the value to the Department of receiving that information on the form itself. I think we might strike a different balance now, but again, there's an ongoing rulemaking addressing that. And I certainly don't think the 25-account rule helps Petitioner in this case, because it doesn't undermine our position that each one of these accounts is a matter of distinct concern, and if you fail to report any one of them, you have committed a distinct violation. There is some basic information besides just checking the box, isn't there? That's absolutely right, Justice Edelmeier. You are required to fill out the other portion of the form, identifying information about the filer of the form. Also, to be precise, there are two 25-account rules in the current regulations, and they require you to report the relationship that you have to the accounts. So do you have a financial interest in those accounts, or do you have signatory or other authority over the accounts but not a financial interest? That information is provided even if you invoke one of these rules. If you have signatory authority over one of these accounts, you are required to identify the beneficial owner of the account, even if you qualify for one of these 25-account rules. So there is certainly additional information. I guess the question is, you don't have to identify the account number? You don't have to provide some of the granular information that would have otherwise been required if you don't qualify, like the account number and the address and things like that. Thank you, counsel. Anything further here? Further? Okay. Thank you. Mr. Geiser, rebuttal? Thank you, Mr. Chief Justice. A few short points. First, for the reasonable cause exception, I think when my friend says that ignorance of the law is no excuse, what this is showing is exactly what Justice Jackson pointed out. This is inviting regulated parties to have to spend money on lawyers to litigate first at the agency level, hope they win, and then if they lose, litigate in court, to try to establish, as my friend suggested, as a fact-specific defense. That is quite the burden on the average person, especially with the cudgel of per-account penalties hanging over their head if they lose. Anyone with 10 or 20 accounts could be facing massive fines if it turns out that they can't prevail in the reasonable cause defense. And just to show how extreme this could be, if you look to pages 104 and 106 of the Joint Appendix, you'll see that some of these $10,000 penalties in this case were premised on accounts that had $24 in them for the year, $31, $25. This is very unlikely what Congress would have actually been thinking, is this is an appropriate calibrated punishment for a non-willful violation. Now, for the avoidance canons, I think it's interesting that my friend concedes that 5322 defines violation the same way as 5321. And I know he said that it is, in fact, a fantastical number to suggest that Congress thought that there'd be a 1,300-year prison sentence for a reporting error. And I know my friend says, well, willfulness is a very high bar, and it certainly is. But that misses the point. Was Congress, in looking at this, saying, if you willfully violate a reporting requirement with no other criminal misconduct, a prison sentence in the thousands is an appropriate punishment? I think that casts doubt that what Congress was thinking of violation is really a per-account measure as opposed to a per-report measure. And I think that follows specifically when the language of the actual statute talks about filing reports. It does not say reporting accounts. It uses the word file. You have to submit the document. And under the current regulations, which is all that really matters for this case, you file a single annual report listing all of your accounts. And just to correct a minor factual point, which I know isn't really critical to the statutory question, but just to be clear for this case, petitioner did file some U.S. tax returns while he was living abroad. He did so because he had invested in a relative's restaurant in California. The relative prepared the tax returns for him. And the reason he thought those were required is because the money was earned in the United States. He misunderstood the United States tax law, which I think a lot of people do. And when you're dealing with-my friend says it's very unusual to have foreign accounts with $10,000 or more. Again, not for people living abroad. Any U.S. resident or U.S. citizen living abroad is subject to these requirements. For those U.S. citizens, this isn't a foreign bank account. This is your bank account. Or it could be your investment account or your retirement account or your safety deposit box or your checking account. And you need to find an accountant in wherever you're living that's knowledgeable in U.S. Bank Secrecy Act law that knows you need to file an FBAR. To even know to ask that question is pretty extraordinary when accountants in the U.S., as the Center for Taxpayer Rights pointed out, in the United States accounts, were unaware of these requirements dating back about a decade ago. So, again, the question really in this case is, what was Congress thinking when they imposed a specific requirement to file reports or keep records? And they did not say, do this by account. As Justice Gorsuch pointed out, there is no language in A5 defining the violation that is phrased in account-specific language, even though Congress took care to specify what a separate violation is in other sections of 5321. I think when they didn't do that with A5, and when you look at the extraordinary consequences of adopting the government's approach, where you're effectively giving the IRS discretion to decide between a range of zero and many multiples of the statutory ceiling, I think it becomes pretty clear what Congress had in mind. Thank you, Counsel. The case is submitted.